05-1294-cr (Lead)
USA v. Latouche (Cartelli)

# MANDATE

*New Haven, Ct.*
*03-cr-182*
*UNDERHILL*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT http://www.ca2.uscourts.gov/), THE PARTY CITING THE SUMMARY ORDER MUST FILE AND SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED. IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of April, two thousand eight.

PRESENT:

    HON. WILFRED FEINBERG,
    HON. PETER W. HALL,
        *Circuit Judges,*
    HON. LEONARD B. SAND,
        *District Judge.*[*]

---

United States of America,

        *Appellee,*

        v.

Salvatore J. Cartelli, Jr., Albert D. LaTouche,
        *Defendants-Appellants.*

---

---

No.[s] 05-1294-cr (Lead),
05-1447-cr (Con),
05-1459-cr (Con)

[*]The Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

1

FOR APPELLANT CARTELLI:              Jonathan J. Einhorn, New Haven, CT.

FOR APPELLANT LATOUCHE:         Jeffrey Kestenband, Tindall, Stratton & Kestenband, Waterbury, CT.

FOR APPELLEE:                    Calvin B. Kurimai, Assistant United States Attorney, *for* Kevin J. O'Connor, United States Attorney for the District of Connecticut, New Haven, CT.

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*), it is hereby ORDERED, ADJUDGED, AND DECREED that the district court's judgment is AFFIRMED.

Defendants-Appellants Salvatore J. Cartelli, Jr. and Albert D. LaTouche appeal from judgments of conviction on nine counts of mail fraud in violation of 18 U.S.C. § 1341, following a jury trial, entered on March 11, 2005 and March 18, 2005, respectively, in the United States District Court for the District of Connecticut (Underhill, *J.*). Cartelli was sentenced principally to a term of 42 months' imprisonment, and LaTouche was sentenced principally to a term of 33 months' imprisonment. The court imposed joint and several liability on both defendants for restitution in the amount of $757,000. Cartelli's appeal includes an appeal from a separate conviction for credit card fraud in violation of 18 U.S.C. § 1029(a)(5), which was consolidated with the mail fraud case for sentencing purposes. We assume the parties' familiarity with the underlying facts and procedural history of the cases.

On appeal, Cartelli raises two issues: first, that the district court erred in vertically and horizontally departing from the Sentencing Guidelines range in sentencing him to 42 months' imprisonment, and second, that the district court abused its discretion in denying his motion for a mistrial based on the publicity generated by a U.S. Attorney's Office press release prior to the completion of all jury deliberations. LaTouche also raises two issues on appeal: (1) the district

2

court erred in providing a "no ultimate harm" instruction as part of the jury charge, and (2) the district court abused its discretion in declining to hold a hearing to investigate conversations two of the jurors may have had with their wives. We address the issues in turn, consolidating the two allegations of juror taint.

### A. Cartelli's Enhanced Sentence

Cartelli argues that the district court erred in vertically departing from the Guidelines calculated offense level of 18 to a higher offense level that included in its range 42 months' imprisonment. We review the sentence imposed by the district court for both substantive and procedural reasonableness. *United States v. Rattoballi*, 452 F.3d 127, 131 (2d Cir. 2006). We review the district court's "exercises of discretion for abuse of discretion." *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005). The district court based its vertical departure on application note 11 under U.S.S.G. § 2F1.1 of the 1998 version of the Sentencing Guidelines, the version applied in this case. Application note 11 provides, "[i]n cases in which the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted." This Court has noted that the factors in application note 11 are "encouraged factor[s]," meaning that "the court is authorized to depart if the applicable Guideline does not already take [them] into account." *United States v. Karro*, 257 F.3d 112, 121 (2d Cir. 2001) (quoting *Koon v. United States*, 518 U.S. 81, 96 (1996)). In light of the victims' statements of the additional harms they suffered from the crimes, which went beyond mere monetary losses, the district court was within its discretion to depart vertically in consideration of those non-monetary harms.

Cartelli further argues that the district court erred in horizontally departing from the Guidelines when it increased Cartelli's criminal history from category I to category II, contending

that by doing so the district court eliminated any benefit Cartelli might have received by the consolidation of the two convictions for sentencing purposes and the grouping of offenses under U.S.S.G. § 3D1.2(d). In authorizing departures from a Guidelines calculated Criminal History Category, U.S.S.G. § 4A1.3 provides that "[i]f the information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." While the district court acknowledged that but for the fortuity of the timing of the two convictions, Cartelli would not have received the benefit of starting with Criminal History Category I, this was not the district court's sole basis for its upward departure. The district court's decision to horizontally depart was also based on Cartelli's prior uncharged conduct, his abandonment of legitimate employment in favor of engaging in fraud, and his high likelihood of recidivism. We cannot find that the district court exceeded its allowable discretion in finding that Criminal History Category I did not adequately represent Cartelli's past criminal history and in departing horizontally to Criminal History Category II.

### B. "No Ultimate Harm" Instruction

LaTouche argues that the district court erred in giving a "no ultimate harm" charge to the jury because the charge improperly defined the specific intent necessary to constitute that element of the offense. In support of his argument, LaTouche relies on our ruling in *United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998), where this Court found error in the use of a "no ultimate harm" instruction. LaTouche's arguments, however, fail to consider our subsequent rulings in *United States v. Koh*, 199 F.3d 632 (2d Cir. 1999), and *United States v. Berkovich*, 168 F.3d 64 (2d Cir. 1999), in which we upheld the use of "no ultimate harm" instructions. As in

4

*Berkovich*, the instruction in this case was proper because (1) there was sufficient factual predicate to necessitate the instruction, (2) the instruction clearly required that in order to convict the jury must find that LaTouche had entered into the scheme with the intent to defraud, and (3) there was no evidence that the instruction caused the jury to be confused about the issue of intent. *See Berkovich*, 168 F.3d at 67. We find no error in the district court's use of the "no ultimate harm" instruction as part of the jury charge given in this case.

### C. Juror Taint

Cartelli argues that the district court abused its discretion in denying the motion for a mistrial based on the U.S. Attorney's Office's press release and subsequent newspaper articles that followed the jury's determination that the defendants were guilty of the crimes charged but preceded the jury's final calculation of the loss amount.[1] "A district court's decision regarding juror impartiality is reviewed for abuse of discretion and deserves deference." *United States v. McDonough*, 56 F.3d 381, 386 (2d Cir. 1995) "[A]bsent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court." *United States v. Rosario*, 111 F.3d 239 (2d Cir. 1997) (quoting *United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir. 1992)). When the issue of the press release was raised before the district court, it properly undertook the three-step procedure laid out in *United States v. Gaggi*, 811 F.2d 47 (2d Cir. 1987), for determining "what effect, if any, [the potentially prejudicial publicity] has had on that juror's ability to decide the case fairly," *id.* at 51. The district court individually questioned the five jurors who had knowledge of the press coverage,

---

[1] Although the argument suggests that there was some quibble over the propriety of the U.S. Attorney's Office's dissemination of a press release prior to the completion of the jury's deliberations, the thrust of the argument on appeal deals with how the district court handled the inquiry into the press release's impact on the jury's deliberations.

asking what knowledge they had and if the coverage had entered into their deliberations.  Each

juror stated that the press coverage had no bearing on his or her remaining deliberations.  The

court was, therefore, well within its discretion to find that the jury remained impartial.  Upon

review, Cartelli has made no showing which would cause us to reject the presumption that jurors

are truthful, *see United States v. Cox*, 324 F.3d 77, 87 (2d Cir. 2003), or on which we might find

that the district court abused its discretion.

LaTouche argues that the district court erred in failing to further inquire into whether two

jurors had engaged in misconduct by speaking with their wives about the case.  LaTouche's

request for the further hearing was prompted by responses of two of the jurors during the inquiry

into the effect of the press release, each indicating that his wife had brought the newspaper

coverage to his attention.

A district court is required to hold a hearing investigating juror misconduct when

"reasonable grounds for investigation exist."  *United States v. Vitale*, 459 F.3d 190, 197 (2d Cir.

2006) (citing *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)).

"Reasonable grounds are present when there is clear, strong, substantial and incontrovertible

evidence, that a specific, nonspeculative impropriety has occurred which could have prejudiced

the trial of a defendant."  *Moon*, 718 F.2d at 1234.   "This court has consistently refused to allow

a defendant to investigate 'jurors merely to conduct a fishing expedition.'"  *United States v.

Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (quoting *United States v. Moten*, 582 F.2d 654, 667

(2d Cir. 1978)).

Although defense counsel had the opportunity to examine the jurors during the course of

the investigatory hearing on the effect of the press releases, defense counsel chose not to inquire

further about the jurors' conversations with their wives.  In fact, counsel asked no questions at all

6

of the juror who stated "there were little bits and pieces that [he] said to [his wife]." When counsel later requested that the district court conduct further inquiry, the court was presented with mere speculation as to what sort of conversations the jurors may have had with their wives or even whether those conversations addressed more than the mere fact that the jurors were on a federal jury in Bridgeport, Connecticut. It is indisputable that counsel made no presentation of "clear, strong, substantial and incontrovertible evidence, that a specific, nonspeculative impropriety ha[d] occurred" necessitating an investigatory hearing into the spousal conversations. *Moon*, 718 F.2d at 1234. We therefore find that the district court did not abuse its discretion in declining to hold a hearing on the issue of the jurors' potential conversations with their wives.

We have considered all of Defendants-Appellants' other arguments and find them to be without merit. The judgment of the district court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

By: _____

A TRUE COPY
Catherine O'Hagan Wolfe, Clerk

by _____
DEPUTY CLERK

7